May it please the court, my name is Steven Misada. I'm pro bono counsel for Don and Mary Thuillard, the appellants in this case. The Thuillards request this court issue an order remanding their case to the district court and with instructions that they be provided with an additional opportunity for discovery. Now while this case is largely legal in its nature on appeal, there's a human element that cannot be forgotten. Mary Thuillard was a dedicated Federal employee, and she served the United States of America for nine years. Then something happened. The Thuillards believe that certain people within the Customs, certain people were out to get her. That was based on animus and opportunity. The Thuillards believe that in or I'm sorry, in 2002, Ms. Thuillard was indicted on smuggling charges. Now the Thuillards believe that these were based on fabricated facts that were designed to harass her and to constructively discharge her employment. Now when Mary Thuillard opposed these charges and when the true facts came to light, the Thuillards believe that a new theory of the charges were brought to light, that these charges were based on a $5 commercial truck fee that her husband, Don Thuillard, allegedly did not pay when he imported ink into the United States in 1998. The Thuillards believe this is merely backfill, backfill to justify an improperly brought indictment. Those charges were dismissed, yet Customs refused to reinstate Ms. Thuillard to her position. In fact, they subjected her to an indefinite suspension and continued interrogations regarding the importation of ink. Now with regard to this civil suit, it's important to note that the Thuillards did proceed pro se in the district court below, and the government moved the case forward. They moved for dismissal or, in the alternative, summary judgment before the discovery cutoff. Now, as part of that motion, they did not support it. They did not provide supporting – a supporting declaration of any of the people with firsthand knowledge of the – of the indictment. Todd Hopkins, the agent who allegedly presented the evidence of the importation of ink, or Paul Anderson, the agent who allegedly testified before the grand jury. The only supporting evidence that they provide is the declaration of Douglas Smalley, a human resources specialist. He has no firsthand knowledge of what happened. Indeed, this is the first appearance of Mr. Smalley, and the Thuillards have had no opportunity to depose him or to review the files and the records of these numerous other complaints and investigations which he discussed. I think you – it probably – we have to look at these in sort of classifications, it seems to me. You've got – because the district court's really using a couple of ways to dismiss this case. And one is that anything to do with their discharge and mistreatment at work and everything else is simply preempted by the Civil Service Reform Act. So, I mean, that's – that's one part of this. And that – no matter how bad the motives or anything else, it seems to me, if the remedy is in the civil service system, then you probably can't bring a suit on it, unless you have a reason why you could. If the prosecution is kind of a different matter, and you're speaking partly to that. Well, let's – I'll try to answer your questions next time, and I'll start with malicious prosecution, because, again, both parties agree that the malicious prosecution claim falls outside of the – or the ambit of the Civil Service Reform Act. Now, there's many elements to malicious prosecution, but really the crux of the claim is, of course, malice and want of probable cause. In Washington, whether the – the existence of probable cause is typically an issue of fact that's submitted to the fact finder. And a prior finding of probable cause is merely evidence that should be weighed amongst all the other evidence of the existence or nonexistence of probable cause. Now, even if we apply the presumption of probable cause in light of the prior indictment, again, citing to the McCarthy and Conrad hearings – or decisions, summary judgment was still inappropriate. Again, this – this dismissal occurred – or the motion occurred before the close of discovery. The – the Twiards are entitled to full and fair discovery, a full opportunity to discover the underlying facts, underlying the – the indictment in which the – Mary Twiard was ultimately against the charges that were ultimately brought against Ms. Twiard. Unlike all the cases cited in the briefs, here there has been absolutely no disclosure of what facts were actually known by customs agents, nor has there been any disclosure of any of the facts or evidence that were actually conveyed to the prosecutor or to the grand jury. Now, certainly a deposition of Agent Todd Hopkins or a – or Agent Paul Anderson would perhaps go right to the core of this – of their claim of malicious prosecution. Summary judgment was premature in this case. Furthermore, the facts on the record – it is the Twiards' position that the facts on the record rebut this presumption. Again, Ms. Twiard was indicted for smuggling – smuggling merchandise to the United States. At the – in response to a motion to dismiss those criminal charges, the – the United States attorney argued that, well, Dawn Twiard, her husband, in 1998, transported a commercial quantity of ink into – across the border from Canada. And he did not pay a $5 fee. Well, it's undisputed that the harmonized – I'm sorry. There is no duty on ink imported from Canada. Now, the basis of this commercial truck fee that they are claiming underlied the criminal charges. It just – this Court should look at it with skepticism. Again, the – the government ignores the fact that Ms. Twiard was neither the driver nor the person in charge of that truck. Furthermore, as defined within that regulation, their private vehicle, a Ford Bronco, is certainly not a commercial vehicle. These facts alone, the Twiards submit, defeat any presumption that there would be – that there was, in fact, probable cause of the key charges based on that – on those facts. Now, of course, malicious prosecution claim also requires malice. Malice can be – simply be inferred from the lack of probable cause. Malice can also be proven if the prosecution complained of – was undertaken for – based on improper or wrongful motives or in reckless disregard of the rights of the plaintiff. We think that is the basis of the Twiards' claim. The Twiards' claim is that Ms. Twiard was convicted of 10 years in prison simply for being married to an individual who transported ink across the border in 1998. Now, Your Honor also brings up the Civil Service Reform Act. And certainly, the Civil Service Reform Act does preempt some of the claims that the Twiards initially brought before the district court. However, the central issue in – that we must reiterate that the Civil Service Reform Act is not without limitations. We cite to the Collins v. Bender case, the Brock v. United States case. All these cases involved a Federal employee who – who had claims based – that arose out of their employment. And in all those cases, the Court determined that the actions of the supervisor were too far afield of a personnel action, and therefore, they are allowed to proceed under civil suit. Now, perhaps this case presents a unique situation. We were unable to find a case particularly like it. The government did not cite a case quite like this one. Here, the underlying claims of harassment, a necessity of those claims is that there be a series of actions and events, a continuity of events. Now, in our case, certainly some of those events arise out of employment. Some do not. As discussed before, the – the prosecution of Ms. Twiard was – falls outside the CSRA. The claims regarding the failure to amend and update the criminal database, that falls outside of the CSRA. The administrative interrogation, the – the indefinite suspension, those arguably are personnel actions. So this poses a new question, and it's – it's our position on appeal that in – because the nature of a harassment claim requires a series of events, a series of conducts, that this – the harassment claim should not be preempted by the Civil Service Reform Act. Now, with regard to the harassment claims in particular, a key point on malicious harassment is that it requires that there be a threat against a specific person that places that person in reasonable fear of harm. It's not a threat of harm. And here, Ms. Twiard, according to the briefs of Respondents, she was being investigated for smuggling ink, fabricating, falsifying documents, cultivating marijuana. These all involve the threat of imprisonment. And I think in here – Physical injury to person or property? I think if – I think it is – it's a reasonable fear if you ask a law enforcement officer that they are going to be subjected to confront – to imprisonment, that that is – it is reasonable to fear bodily harm. Now, the government also raises a point that the – that Ms. Twiard failed to plead in her complaint that she was part of a protected class. Well, the claim was made, albeit not in the plea. The Twiards did state that they believe that the treatment of her was based partially, at least in part, on her religious affiliation. Now, although it was not in the pleadings, this is, again, an example of where leave to amend would have perhaps cured that. If in fact this Court deems that the complaint was insufficient on its face, perhaps a remand with leave to amend would be appropriate. Now, again, Your Honors, what is important is that the Twiards are entitled, as citizens of this country, to explore their claims. They have a right to discovery and they have a right to inquire what the basis of these charges were – that were made against Ms. Twiard. They have a right to discovery and a right to request documents. Again, in the record, in Executive Record 43, the Twiards attached the various discovery requests that they've submitted to the U.S. – the United States Attorney's Office. Virtually all of them are objected to. The Twiards did move for what has been construed as a motion for – a motion to compel discovery. They also moved to extend the discovery deadline in light of the pending motion for dismissal or alternatively summary judgment. The district court dismissed their case and denied their motions as moot. We think this was error. Now, unless Your Honors have any further questions, I think I'll  Kagan. You may do that. And we'll hear now from Mr. Viviano. Thank you, Your Honor, and good morning. May it please the Court, my name – Was he indicted initially both for smuggling the ink and for not paying the truck fee? It was a two-count indictment, yes, Your Honor. So on the first count for smuggling the ink or bringing the ink in without paying a duty, what was the basis for that charge? I can't answer that question, not being the prosecutor that brought the charges or one for the grand jury, but the record can say – says that the prosecutor and his arguments to the – I guess I can't answer the question that the record says, that Mr. Harrington, the prosecutor who brought the charges, argued that the basis of both charges was the $5 fee, that not paying that fee amounts to both smuggling and to not paying the duty – the fee that's required. So not paying the fee amounts to smuggling the ink even – even if the ink could be brought in without a duty? Correct. That it's bringing in commercial merchandise by violation of law without paying the money required. And then the idea is that the Bronco is used for a commercial purpose, and does that make it a truck? That was the argument, yes. So who rejected that argument? That was the district court, Judge. We found as a matter of law that that was not a commercial vehicle for the purpose of the statute. However, it was – that's different than saying that there wasn't a good-faith argument to be made in that regard. The – while the charges were ultimately dismissed, they were dismissed on a legal basis in interpretation of that statute. The facts on which they were brought were not contested. The facts that – Excuse me. Go ahead. Finish your answer. The essential facts that Ms. Twiard with her husband were running a business importing commercial quantities of ink, so they were both acting together in this endeavor, and brought the ink across the border without paying any duties or fees were uncontested. The only contested fact was the date on which it occurred. It was not relevant to the indictment because the actual act itself occurred. It wouldn't have been more or less legal based on which day it happened. Well, the indictment doesn't mention a truck fee or anything else. It just – it alleges smuggling, as I recall. Is that right? Correct. It just cites the statute, Your Honor. And it's hard to understand how bringing something across the border without paying a fee is a crime if no fee is due. In that regard, if there was no fee due, that itself would not be a crime. If the charges were based only on a fee or a tax or a duty, then it wouldn't be. But there is a – they did believe, in good faith belief, that there was a $5 fee due. And while that seems like a small amount. Doesn't that – it almost just oozes from the page that that's a fallback, makeshift argument. That the original thing was, oh, gee, they've imported this stuff and the indictment seems to be framed that way. It doesn't talk about anything about registering a truck. It's a very strange prosecution. I acknowledge, Your Honor, that this is an unusual prosecution. And normally I don't – I haven't seen a lot of prosecutions that have stemmed from a $5 fee. However, I think that an important fact to remember here is that this is an employee who has sworn an oath to uphold the law, who was running a business, a violation of the law, against – without reporting it to her employer. And as part of that business, was importing goods across the border without reporting that to her employer, and was not paying the duty that they believed was due. And now they're reporting that she was bringing it in. You said that the date was immaterial. But insofar as the wife is being charged essentially as an accomplice, as I understand it, why isn't it material when their claim is that all of these events, whatever they were, happened in November, not December. And in November, Mrs. Twiart was in Indiana or someplace like that on vacation and wasn't a party to it in any way. Why isn't that date material? Your Honor, it was because she was a party to it, even on that earlier date. The declaration provided by the Twiarts with Mickey Pizuric, the man in Canada who sold them the ink, set a different date. It was November 30th, I believe. But also acknowledged that both of them were running the business. Both of them were involved in the purchase. And he had discussed it with her more often than with her husband about when they're going to make the purchase and bring it in. The fact that her husband did the actual driving doesn't change the fact that she was just as much a part of the commercial importation of that ink as he was. And she, being the one taking the oath, makes it a more serious crime if she was doing what was alleged. What's the crime? Well, Your Honor, it's similar to shoplifting. And that's a small amount. No. I mean, you're talking about buying ink and importing ink. And she makes this deal with this guy to bring ink from Canada into the United States, which is okay. It's not against the law. You don't have to pay a duty. The customs believe that she did based on the fact that they did not pay the $5 fee. That's the crime. So when you said she brought it in without a duty, you mean you're characterizing the $5 truck fee as a duty? I apologize for using those words interchangeably, but, yes, I do mean that the $5 is what Aren't they interchangeable legally? Isn't duty a tax on the goods and not on the means of transportation? That's an argument one could make, but I don't think that's clear from the record that that's already a resolved law. I think that failing to pay the amount that's due is a crime. If you don't pay it for the duty or don't pay it for the fee, you're still not paying what you should be paying. And the service certainly had the grounds to think that she's not paying what she should be paying. She's hiding from us the fact that she's even bringing this stuff in and running this business. What is she up to? I believe there's probable cause here to at least bring charges. Why isn't there an issue of fact as to whether there was probable cause? I don't believe so, Your Honor. Why not? Because of the fact that the reason why the charges were dismissed was based on a legal argument, not an issue of fact. The legal argument was whether that was a truck qualified as a truck, a commercial truck under the statute. It was not a – there was no factual finding that said there was no probable cause. It was a legal finding. And in that argument, it was conceded that what the facts were were correct, that she did bring it in, she didn't pay a fee, and she – I don't understand how that means that there's no – that as a matter of law, a malicious prosecution claim cannot be sustained. Because assuming all the other elements are met, if the person bringing the charge knows that it is spurious for a legal as opposed to a factual reason, doesn't that still state a claim under Washington law? If the person knows that it's spurious, that might create an issue of fact. But there's no evidence of that in this record, Your Honor. This is a first – I'm sorry, an issue of first impression. There's no case law that interprets that. There was a – I think the record shows a good-faith argument that when you take a Ford Bronco and make it into a commercial truck, it could be considered a commercial truck. And maybe it's not a semi-truck, but if you're having commercial loads of merchandise in it, it's becoming a commercial truck. And they believe that should be at least made to the court, and that argument should be raised. How much ink was brought in, in that truckload? I don't know the exact amount that's in the record, but it has been conceded it was commercial quantities. It was for a commercial enterprise. So there's something we said there, that if you're taking massive amounts, just for the sake of argument, of merchandise for your business and you can shove it into a massive SUV that we have nowadays, you can avoid the fees of commercial trucks that would happen if you got a U-Haul truck. And I think the service had a good-faith argument to at least bring those charges, and let the court rule on their argument, that when people are doing this, they're trying to get around the intent and purpose of the law by using a different kind of vehicle. If someone doesn't pay a truck fee, is that really smuggling? I mean, can the service bring some kind of civil claim for their $5 fee? Let's assume it was some manufacturer of goods in Canada, and they took a Bronco across the border. Well, let's say they took a semi-truck across the border, but they didn't pay their $5 fee somehow. Would they be charged with smuggling? Yes. Assuming the goods didn't have any duty owed on them. There was no tariff or whatever on the goods. Your Honor, there's discretion as far as what the action is taken. There's, of course, an option. Just like I'll use the analogy of a shoplifter. If a store catches a shoplifter, they can choose not to bring charges. They can say pay back the $5 that you stole and let the person go. If it's a kid or someone other, they feel it's innocent and not worth bringing charges against. But they have the right to press charges, even on a candy bar, because a crime has been committed here. That's particularly if that person is an employee of that store who they hired for the purpose of enforcing the rules. Then they can fire the person, which is equivalent to the civil remedy, if they're an employee. It doesn't give them extra crimes beyond the shoplifting crime. It gives them the shoplifting crime plus a civil remedy. I have trouble with the shoplifting alternative because these are example, because these are goods that were properly paid for and properly brought into the United States without the payment of any duty in the normal sense, any tax on the goods themselves. They could be freely brought in. You or I could go to Canada and bring in ink. At least we could then. I don't know where the law is now. So I guess I have trouble seeing where that turns into shoplifting. Your Honor, I understand your trouble. I understand that looking at the record, it does strike one as unusual for a $5 fee to turn into a criminal prosecution. However, I believe the declaration of Mr. Smalley and the argument before the district court on those charges explains that this is not a normal circumstance. This was an employee who took an oath of office to uphold all the laws of the United States on the border who was knowingly, intentionally violating them. I believe it's a different case. By having her husband drive across without stopping to pay a $5 fee. Yes, by running a business without telling her employer, involving commercial importation without paying the fees that were due. That is something that I think signals a greater disrespect to the law, and I think it's appropriate for these circumstances to dictate the choice of prosecution. And ultimately, there was no disrespect for the law. I guess that's what I'm struggling with, because there was no crime. Correct. And so there was no disrespect. The question here, though, isn't whether there was a crime. It's whether there's probable cause to believe there was a crime. And on that regard, there is in the record evidence that there was. They did believe that if you take a truck and make it into a commercial truck, you could arguably be committing a crime under the statute. There's only one way to find that out, which is to have a judge rule upon it. The judge did, and they respected that ruling, but the probable cause was there. And the Tweards have not done anything to change the facts of the scenario. They just said that it was too little an amount and they're picking on us because they don't like me. But there's nothing there to say that there was no probable cause. It's a grand jury indictment, which under McCarthy v. Mayo is a presumption of probable cause, even on a small crime. And the grand jury agreed, even with the same facts, that there is a ---- We don't know what the grand jury heard, whether they were told that it's illegal to bring ink in without paying a duty on it or anything. We don't know. Correct. We don't know because of the fact that the appellants have not brought a prima facie case to even raise that issue. They haven't had any discovery. Because the burden is on the plaintiffs on the malicious prosecution claim to show that there was a lack of probable cause. They have to present that prima facie case before discovery will proceed. Otherwise, everyone can simply bring an action and say, I believe or I speculate that a lot of misdeeds happened here and I want to ---- Well, if ---- but they have to show that there's no probable cause to get discovery. We've got the dismissal. What else? I mean, the facts of this case, I mean, I'm having a hard time seeing what the crime is, but you're saying it's not paying the truck fee. I'm not sure that what ---- As it turns out, Your Honor, there was no crime. That was what the judge ruled. So the question is whether there was probable cause to prosecute, even though it turns out that the defendants in the case were correct about the law. Precisely, Your Honor. And this Court has already ruled in McCarthy v. Mayo and Conrad that when a grand jury indicts someone, that creates a presumption of probable cause that the plaintiff has to rebut. In this case, the only rebuttal is we don't believe there was. There's no evidence of that. We don't know what the grand jury indicted based on. Your Honor, we do know what ---- What if the grand jury was told that there's a duty due on ink and that's why they Your Honor, the danger in that argument is that it leads to open-ended, limitless speculation, that someone can come in and say any number of theories of what could have happened on any different indictment. They could have made up that there was no ---- there was more ink than there was, they were driving a different vehicle. Could be a reason why the plaintiffs should be entitled to do some discovery about what really happened. But, Your Honor, as the district court found, there needs to be at least a threshold showing of something in dispute before they are allowed to do discovery. Otherwise, discovery becomes burdensome and harassing and is used as a ---- So if we think, if we were to conclude, contrary to your argument, that there's an issue of fact, whether there was probable cause to indict them, what then are we supposed to do? If there's an issue of fact on the probable cause to indict, then it's normally a question for the finder of fact. There is no issue of fact here because the words used by the defendants, the appellants in the brief is defendants, or the two words speculate. That's the only argument. Every argument is prefaced with speculate or believe. There's not been a single iota of actual evidence that says that something was misconstrued or lies were made. And that can come up with a hundred different stories. But for the government to get a summary judgment in its favor, it has to prove that there was no problem, that there was probable cause, right? And it did so with the presumption. With the presumption. Okay. I believe so. My time is up, Your Honors. That's all I have. Thank you, counsel. Mr. Misada has some time remaining, I believe. I have a question for you before you say the things I'm sure you have written notes to tell us on rebuttal. And that is counsel has made much of the fact that the disagreement was a disagreement of law and not fact. That is, whether or not $5 had to be paid or didn't have to be paid. And that we can tell, therefore, that there's no bad faith when everybody agrees on the facts and all they want is a court to rule on what the law is in that circumstance. What's your response to that? Well, I think, excuse me, Your Honor, I think that argument is based on the unsupported assumption that this whole – this legal claim was the same claim presented to the grand jury, as this bench has pointed out. The government notes that this is a very unusual case. In fact, it's almost unbelievable that this was the claim, these were the facts presented to the grand jury. Ms. Tuiard was not the driver of the vehicle. She was not controlling the vehicle. This was a truck. It was not – I mean, this was a Ford Bronco, not a commercial truck. But she does admit, I think, for purposes of where we are procedurally, that she was a co-operator of the business venture, or does she not admit that? Well, I'm not clear what the record says. It is clear that Dawn Tuiard was operating a business, and I think the allegation was she was participating somehow in the business. Does she deny that? I'm not sure from the record if that's clear. So I'm sorry. I don't know the answer to that. She did – I know in the past she did deny having any participation in this outside business, yes. Now, even if we assume that the government's argument is correct and that the indictment was based on this $5 fee that was allegedly owed by Dawn and not paid, again, whether this – whether these charges were brought in good faith is a – is a remaining issue of fact. Certainly, the customs argued. What is – what is – on the one side, we have a grand jury indictment, which at least creates a prima facie case, rebuttable and so forth. What is the hard evidence on the other side besides just feeling that nobody could possibly want me for this? Well, of course, we would argue that the facts alone defeat the presumption because it is so unusual, so bizarre. Unusual doesn't mean malicious. So what are the facts? Well, we believe that the facts, the hard facts – and we'll admit it – we'll admit to this Court that a lot of the facts that went on behind the scenes, what was conveyed to the prosecutor, what was conveyed to the grand jury, we don't know because we've been barred discovery. And if we had an opportunity to depose several individuals, if we could review some of the files to see what was presented to us. Wouldn't that apply to any situation for any crime in which there's been a grand jury indictment and the person, for one reason or another, the prosecution doesn't go forward for whatever reason? Your argument essentially is in that scenario where the only thing they have is a grand jury indictment and the prosecution, we get to just create, you know, look without having any facts. Is that your position? I think there is – I think this would be reviewed on a case-by-case basis. I'm sorry, I'm out of time. No, but please, I do want – because I'm not sure what – on what principle basis we would distinguish your situation from one for a much more serious crime that we could all agree was, you know, importing 50 pounds of cocaine or whatever it is. And for one reason or another, there's no prosecution that follows. And does the person then get to get discovery to support their belief that they must have been out to get me for a bad reason? Well, I think, again, this will be a factual – this will be a factual inquiry. And looking at the facts of different cases, this case in particular, it is unusual. And there is a suspicion that something went on behind closed doors that isn't being fully revealed to the court, that hasn't been fully revealed. Why does the suspicion respond to the prima facie case of the grand jury indictment? Well, if it weren't that case, Your Honor, then essentially the government could move for dismissal or summary judgment as soon as any malicious prosecution claim is ever filed and say we are – although that we have all the information, we have all the records and all the documents that prove or disprove your case, we are not going to – we're not going to provide them to you in discovery. The error in that case would be that people with legitimate claims would be borrowed. But that presupposes that no one would ever have any evidence such as an affidavit from a disinterested witness saying, you know, I told the prosecutor there was no crime here and they went ahead anyway, or something like that. I mean, some fact somewhere besides I can't believe they would do this to me. Well, certainly in the record there is a letter from Mickey Pazurek, and I'm not sure if I'm pronouncing the name correctly. Granted, it's not a sworn affidavit, so, you know, I do reserve. But it did state that, look, this – this – the sale of ink occurred in November, and nevertheless, they went forward with their prosecution. If I understand your opponent's position, it's that at the beginning you have to show that there was no probable cause. And once you get that showing made, then the question of malice is something that would be just – you could go into discovery and everything else. But I think their position is that you've got to make the showing of no probable cause. Now, I don't know. It may be your position that there's no probable cause in this instance as a matter of law. Well, our position certainly – oh, that's an interesting question. Well, you've got ink that was brought in. There's no duty due on. Right. There's a license fee that's applicable to automobiles – to vehicles designed as commercial vehicles. And this wasn't. Certainly. And that very – that is an argument that we, the Tweeds, would offer, that by looking at the facts of this case, there cannot be a finding of probable cause. This Court can review these facts, whether you call it de novo, and look at what was presented. There is no probable cause. There – the questions by this bench evidence the skepticism on which – on the – with regard to the arguments that the government presents here today. That $5 fee, was that presented to the grand jury? I think that alone is enough to justify some discovery on that point, Your Honors. Thank you, Counsel. The case just argued is submitted. We appreciate very good arguments by both counsel, and in particular, we wish to thank Mr. Misada for agreeing to pro bono representation in this case.
judges: Canby, Graber, Gould